319-0754-WC Monterey Mushrooms, Inc. Appellant v. The Workers' Compensation Commission, Sylvia Mendez-Apolli. Okay, counsel. Mr. Stavropoulos, you may proceed. Thank you, your honor. May it please the court, as indicated in my Zoom box, my name is Peter Stavropoulos, and I represent the appellant, Monterey Mushrooms, in this matter. In this case before your honors this afternoon, we have a case where there was a gross misapplication of the law to the facts on the part of the commission. And due to a combination of the failure to apply the correct law, in awarding the claimant permanent total disability benefits and inappropriate shifting of the burden of proof and relying on inadmissible evidence, the commission's decision is against the manifest weight of the evidence and should be overturned. Valley Mould instructs us the three ways that a claimant can establish permanent total disability. And in this case, the employee is O for three. The three ways are medical permanent total disability, obviously unemployable, and odd lot permanent total disability. So we'll start with the medical permanent total disability as that appears to be the one that the arbitrator utilized when drafting the opinion that was adopted by the commission. Counsel, can we ask you a question? Of course. Does the record on appeal contain any transcripts of the witnesses testimony from the section 19B hearing or any of the exhibits that were admitted at the hearing? Is it in the record? In the original hearing? Is it in the record? I don't think that information was transmitted. What about copies of the decision that's issued by the arbitrator commission and court following the section 19H hearing? I also did not see that in the record. And you're the appellant's attorney whose responsibility is to provide that? That would be mine to provide it. I didn't see that it wasn't in the record when I initially got it from the court. It was only much later that I realized that. Well, I'll point that out because it may weigh against you in some of these ultimate rulings if you don't have sufficient evidence in the record to allow us to adequately address the issue. So keep that in mind. Okay, I will. Thank you. So the case law instructs us on what a claimant needs to show in order to achieve medical permanent total disability. And the courts are comprised of lawyers who are wordsmiths who choose their words carefully and don't just pick words out of the air. So the cases of Seiko and Shoon, which are cited in my brief, instruct us that to prove medical permanent total disability requires statements either by testimony or medical treatment records that the claimant is incapable of performing quote, any type of work, end quote. And that is not at all what we have here. The commission relied on two pieces of evidence in reaching its determination and awarding permanent total disability benefits. The letter from Dr. DePhillips from September of 2014 and the testimony of Dr. Eilers. Dr. DePhillips, rather than staying in his lane as a physician and rendering a medical opinion, instead engages in a foray into vocational rehabilitation by putting in his letter that the claimant is permanently and fully disabled for meaningful or gainful employment. This is not the language we're looking for. This is the language that thrusts us into the odd lot examination of the issues here. In Seiko, we're instructed by the court that what's necessary to establish medical permanent total disability is a statement that the petitioner would be unable to perform any work. In Shoon, the court points out in denying benefits that there are no opinions that the claimant was incapable of performing any type of work. That's not even close to what we have here with Dr. DePhillips' statement of meaningful and gainful employment. That language is echoed by the medical expert that was hired by the petitioner in this case and is the only witness to testify on behalf of the claimant. He echoed the opinions of Dr. DePhillips and then admitted that the claimant would require intervention with a vocational rehabilitation specialist. As Dr. Eilers testified on page 269 of the record, at best, she might be able to do something sedentary on a part-time basis. That is not permanently and totally disabled. That is someone who can work. He then admits that a vocational counselor would be used to determine whether she was competitively employable and he himself is not one. There's no way a reasonable trier of fact can look at this evidence and find medical permanent total disability. Their own expert witness said that she can work. He initially said it was, she could only work part-time because she's taking narcotic pain medication. Only problem with that opinion is she wasn't taking narcotic pain medication. She even testified during trial that she only took over-the-counter pain meds and didn't take any narcotic pain medication. Let me ask you a question to clarify. Which part of the perm total prong, the three ways that can there be established, are you saying is not there? The ad-lot, the medical, what are you saying is not there? I'm saying that none of them are there. Right now- Didn't the commission make a finding specifically that Clamence was permanently and totally disabled based upon the medical evidence? Didn't they find that? They found that. They cited Dr. DeFillips' letter and then they cited the inadmissible testimony of Dr. Eilers where he talks about all his vocational testimony and why she's not competitively employable. Well, who weighs the evidence though? Who's supposed to weigh the evidence in the way of the evidence and the credibility of the witnesses? They are supposed to, but they're also supposed to apply the correct law. And if the evidence isn't supported by the law and the case law, and there's no direction from the case law when it looks at the facts, then the decision can't be upheld. They say she's medically permanently totally disabled when we have the treater saying meaningful gainful employment, which then gets into whether she is competitively employable. And you have an expert saying she can work. It's only part-time because of narcotic pain medication. Oh, wait a minute. She's not taking narcotic pain medication. It's not a part-time restriction. So she can work sedentary life. And on my worst day, she can work 40 hours a week sedentary life. And Dr. Eilers went on to state that a vocational rehabilitation specialist would have to determine whether she could be competitively employable. So to sum it up very simply, you're saying on that element of proving permanent total disability, there is no evidence that she would medically prohibited from seeking employment, correct? Correct. Because there's no testimony or evidence that she is prohibited from doing any work. Correct. Okay, so now we have two other approaches. And why do they not support the finding? The two other approaches, the second one being obviously unemployable. We have petitioners own experts saying that she can work. I would say that means that she's obviously employable rather than obviously unemployable. There's no indication anywhere that she's obviously unemployable. Those cases from what I can see are catastrophic cases. This clearly doesn't fall under that front. So what's the third one? We've got the third front. Now we have the third one, ODLAT. So to prove ODLAT, permanent total disability, we need either vocational testimony or evidence that the petitioner is unable to be competitively employed or evidence of a diligent job search. We don't have any of that here. There's nothing. There's no vocational testimony, even though Dr. Eilers suggested that would be the way to go. There's no vocational report even. Not only is there no evidence of a competent job search, she testified she hasn't even looked for one job. You can find that on page 155 of the record. She didn't look for one job. So under the case law, she fails to prove ODLAT permanent total disability as well. So turning the court's attention to what I believe is reversible error in this case, the commission relied on the opinions of Dr. Eilers. He's very well credentialed. He's got a law degree and he's got a medical degree. What he doesn't have is a certification as a vocational rehabilitation specialist. Yet he offered that type of testimony. He testified that there's no competitive job search job market for her given her alleged restrictions. And that testimony is clearly outside his expertise. If I can direct the court to his report in which his original report, where he states this, she's not able and will never be able to return to her competitive employment or her position at Monterey Mushrooms. And in light of her language limitations and her cognitive educational experience, she was probably permanently and totally disabled from any competitive employment as it would have to be sedentary work or desk-based work. And she does not have the skills to carry that out. That's vocational testimony. He echoes that. That's what he said right out of the box. And that's what he echoes while he's testifying. So what is the- Is it even a definite opinion? The word probably is in there, isn't it? It is. And that's from his original report. He goes on to testify that it's his opinion that she's not competitively employable because of all these factors. But that's his mindset that she, if anything, would have to prove about permanent total disability. So I object to those opinions. The arbitrator on page 255 of the record says that she's going to rule on those opinions. If you look at where those opinions and my objections are contained within the record, 265 and 267, she doesn't rule on those objections. And then making it worse, looking at page 65 of the record, she relies upon those opinions. She cites Dr. Eiler's opinions that of permanent total disability and with all the vocational components that he has within his expert testimony and relies upon those. So there's no evidence that she didn't give it any weight. In fact, she gave it great weight. So to me, that is clearly an abuse of her discretion. The case law is pretty clear on this when it comes to expert testimony. He's outside his area of expertise. He even admits it. I have- Who's Dr. DePhillips? Dr. DePhillips was the treating doctor who is no longer practicing in Illinois. He is now in Indiana. Yeah. Okay, well, notwithstanding that aside, and we appreciate that, I'm not sure it has to do with his opinion at the time he gave it, but the commission cited his opinion to support the award. It did. Why did it not support the award? It didn't support the award because it's not an opinion that she can't do any work. It's an opinion that she is, what did he say exactly? Let me get this right. Okay. Permanently and totally disabled for meaningful or gainful employment. That is not, I can't do any work. Now, if she had showed up with a job search and vocational testimony combined with that opinion, then I would be in trouble and I wouldn't be sitting here. I'm actually sitting here in front of you today. I would be, I'd have no chance because then she would have proven ad lib permanent total disability, but she didn't go down. She was trying to go down that road and she didn't take one step down that path. So with the, if he had said she's permanently and totally disabled from any work, I also wouldn't be here today. I'm here today because every element of the medical permanent total disability award that was put forth by the commission is mired in this vocational rehabilitation situation within saying meaningful or gainful employment. That's not a medical opinion. For it to be meaningful or gainful, that's up to a vocational rehabilitation specialist to make that determination. That's not a medical determination. And that's why it doesn't support the award. Wait, wait, what's not a medical determination? About the meaningful or gainful employment part. Okay. So that comes into, hey, is this a real job? Can she sustain herself with this type of job? Is it gainful, right? Is it meaningful and gainful? Those are all factors that need to be weighed by a vocational rehabilitation specialist. They do not support an award of a medical permanent total. Briefly, with regard to the award of penalties, the commission seemed to think that the report, that there was no new report from Dr. Salehi that was relied upon by the employer in this case. And that's just not true. There was a new report. There was a new evaluation, a new physical examination. The findings turned out to be the same, but they were honest findings. They were honest findings the first time. They were honest findings the second time. If I had walked in with the report that was used during the first trial, then fine, that would be one thing. But to rely upon the findings of a board-certified neurosurgeon who was not swayed by sharing what the status of the litigation was, it was a completely unbiased opinion, it's not realistic. It's not supported by the evidence. To say that the opinions were already rejected, that's not true. The opinions were not rejected because they didn't exist at the time of the first trial. For all those reasons, the appellant in this case asked that this court find that the commission decision is against the manifest way of the evidence and overturn it. Thank you. Thank you, counsel. You have time in reply. Thank you. Ms. Hall, you may respond. Thank you, your honor. Good afternoon and may it please the court. My name is Laura Hall and I represent the employee, Sylvia Mendez in this matter. It is our position that the award of the commission was in fact not against the manifest way of the evidence. And while counsel for the employer seems to find that the record is devoid of any facts supporting the award of permanent total disability, it remains our position that the record is in fact chock full of facts that support the award. I would know first and foremost that there is only one physician in these entire proceedings who states that there's not a causal connection and that my client is not permanently and totally disabled. And that is the respondent section 12 physician, Dr. Salehi. Dr. Salehi, whose opinions have been disregarded by the commission. Dr. Salehi, whose own testimony was that he did not examine or review any of the objective evidence, any of the MRIs, the discogram, the CT, when he made his determination and his opinions in regards to my client's condition. I would also note that there's a massive disparity between my client's treating physician, her own section 12 physician, Dr. Eilers and Dr. Salehi. Ms. Mendez has- I have a question about Dr. Eilers. What is his expertise in vocational rehabilitation? No. He is- He's a- Dr. Eilers, I'm sorry, I lost you for a second. The medical doctor, he's not a vocational rehabilitation expert? That is correct, your honor. Then what business does he have opining that the claimant was permanently and totally disabled based on her language limitations and cognitive educational experience? Dr. Eilers did testify during his deposition that one of the factors he takes into play into an account when treating individuals is his goal is always to try to get his patients back to gainful employment if he can. And in rendering his opinion that she was not just permanently and totally disabled from all employment because of her injury, but also those other factors, his experience in treating individuals and trying to get each individual patient back to gainful employment as part of his medical profession, I would contend gives him an adequate basis to make that opinion. Haven't we in prior decisions determined that Eilers should stop giving vocational rehabilitation opinions and restrict himself to medical opinions? There are rulings. Yes. In that regard, yes, your honor. Now, the question that I have is the commission appears to have relied upon Eilers and DePhillips both in determining if she's totally and permanently disabled. If Eilers' testimony that he believed she was totally and permanently disabled based on language and cognitive educational experience should never have been considered by the commission, then what are we to do with this case? I would first note that her treating physician, Dr. DePhillips, did render the opinion that my client was permanently and totally disabled from any meaningful or gainful employment. And I certainly would contend that employment in and of itself must be meaningful or gainful in nature. Otherwise, what is the point? Further, you could look at Dr. Eilers' opinions, take out the vocational opinions he rendered. And I would note that he does say at best, my client is capable of one to two hours a day of sedentary type work. And on some days, no work at all, not because of narcotic use, but what he continually points out is the chronic ongoing pain that Ms. Mendez suffers from. And one to two hours a day, every once in a while, doesn't make someone gainfully employable. And I would contend that further his support that she is permanently and totally disabled, whether it be through his medical opinion or from the fact that she's obviously unemployable. Is it your position that if Dr. Eilers' testimony was completely removed from this case, that your client still prevails based on Dr. DeFillips' testimony with regard to her medical condition? Yes, Your Honor. Do we have any way of knowing whether the commission would have decided this case the same way if the commission had totally discounted Eilers' testimony? I don't know that the record provides us with any indication as to how they would have ruled had they disregarded Dr. Eilers' testimony. So we cannot make a definitive determination that we could affirm this record based solely on DeFillips' testimony because we don't know what the commission would have done without Eilers' testimony. That's a valid point. And then that would bring me to the second possible way that an individual can be found to be permanently and totally disabled. I certainly would contend that Ms. Mendez is obviously unemployable. When you review the record in this case, when you review the opinion of Dr. DeFillips, and should you want to disregard Dr. Eilers completely, I would contend that if there was any error in the admissibility of his testimony, it was harmless error and it's not reversible. But at worst, if we disregard Dr. Eilers, we have the record, we have my client's testimony, we have the evidence that Ms. Mendez has a fifth grade education out of Mexico. She does not speak English and she cannot communicate in English. Her only job experience is 13 years with the employer in this instance, doing heavy intensive manual labor. That she has chronic pain, she can't walk well, she has coordination issues. She struggles to put on shoes, socks, even undergarments. She struggles with the majority of her daily living tasks. And those items, when you take those and compound them by Dr. DeFillips, her treating physician, and the only evidence in the record- What does Dr. DeFillips add to her testimony that she is limited and she has chronic pain, which she's testifying to. You're saying these handicaps, et cetera, language, whatever. Why are we talking about Dr. DeFillips now? Just that his opinion, in addition to those factors, I would say, render my clients- In addition, that she's found to be credible and testifies to those things, that the commission can find her to be obviously unemployable. Yes, Your Honor. She's standing alone. Yes. Then why gild the lily? Why don't you argue that? That's a very good point, Your Honor. And I would argue that my client was found to be credible by the commission in the decision. They are the ones who had the ability to best judge the credibility of witnesses and it was in their purview. And they did find her to be credible. They did not find her complaints of pain or anything about her testimony to not be credible. Now the question is, forget this credibility. They found her credible. So what did she testify that would go to the conclusion? She's obviously unemployable. My client testified to, obviously, first and foremost, testified through an interpreter. She did not testify in the English language. There's no- Doesn't matter. There's a communication barrier. Doesn't matter. The fact that my client was 38 years old when this occurred, that she has chronic pain into both legs, that she struggles to walk, that she cannot drive because it's not safe, that she cannot lift a gallon of milk without pain. And the only employment she has ever known is manual labor. And she has not been offered a job back by the employer. She was unable to get a job back from the employer. The extent of her injury, the ongoing pain issues, struggles to walk, to sit, to stand, to even care for her children, to go through anything in daily life coupled with her permanent restrictions makes her obviously unemployable. There's no one who hires my client under that theory. Well, we, okay. Obviously unemployable. Now there's a third way you can get some of these benefits, right? Yes, your honor. And what are those? Your honor, if we were to go under the odd lot theory, respond or employer's counsel is correct. I don't have an independent vocational expert that was hired. I don't have evidence of job searches. I have to concede those points. However, if you look under the odd lot theory, is there a job market for an individual in Ms. Mendez's condition? And in a job market for a woman who only knows manual labor, who cannot communicate, who has a fifth grade education, with a fifth grade education and no English speaking, there are no transferable skills there. This is not a woman with a high school or even a college diploma, just the education equivalent to a 10 year old. A woman who has trouble sitting, standing, all of the factors I previously argued that under that theory, and there's been no- Well, you don't argue- Evidence I would argue we have, there's enough there in the record. Odd lot. If you are hanging your hat on obviously unemployable. Correct. And I mean- They're getting conflated here. So what you're saying is she's obviously unemployable because you don't have anything over at odd lot. You're just- No. The opposing counsel is correct. I have to concede he's correct that I don't have full court or job searches. Okay. So you've got one basis. I would argue that she is both obviously unemployable and that I have physician testimony that my client is permanently and totally disabled, which is what the commission found. Even if you disregard Dr. Eilers, there is the testimony of Dr. DePhillips. And Dr. DePhillips said- That my client is permanently and totally disabled from all meaningful or gainful employment. Based upon? Based upon her current condition. He also based it upon the fact that, I mean, he did base it upon some factors other than the medical admittedly, but he does render that opinion. And there is no medical evidence in the record that contradicts that, except the opinion of Dr. Salehi, who says she's capable of full duty work. And his opinions were disregarded by both the arbitrator and the commission. Thank you. Thank you. Are you, you haven't- I was going to address the remainder of the points, if I may. Yeah, you did have time left. Thanks. Just briefly in regard to counsel's argument in regard to the penalties and attorney's fees. The commission found that the delay in the payment of benefits was vexatious, unreasonable and unjustified as they continue to rely upon the opinion of Dr. Salehi, whose opinions were previously discounted. I don't believe that that award was against the manifest way of the evidence. Further, I would note that council has conceded that temporary total disability benefits should have been paid through November 4th of 2014, which was the date of Dr. Salehi's second exam. And as such, I would ask that the commission's award be affirmed in its entirety. Okay. Thank you, your honors. Thank you, counsel. Counsel, you may reply, excuse me. Thank you, your honor. You mentioned that the issues here and the methods to prove permanent total disability are getting conflated and you're right. And I think that's because of the way this decision was written. It's written based on testimony and medical evidence that would be used to prove an odd lot permanent total. And then it's found to be a medical permanent total. With regard to obviously unemployable, it doesn't stand to reason at all that when they hire an expert who testifies that the petitioner could work part-time in a cottage industry, that makes her obviously unemployable. Those two things can't exist in the same universe. He says she can work at least part-time, that's work. Is that meaningful or gainful or competitive employment? That's a vocational issue that would move us into odd lot. So if we look at each one of the three methods that this claimant could have used to prove permanent total disability, you can't start mixing and matching to come up with the result that you want. And that's what the commission did in this case. You also asked your honor about the basis for Dr. DePhillips' opinion that she cannot perform meaningful or gainful employment. And he says in that letter, quote, taking into account your age as well as the effects of the injury and the condition of your lumbar spine as it exists today and the symptoms provoked by those injuries, it is my opinion that you are currently, permanently and totally disabled from meaningful or gainful employment due to the work injury of 10-1109, end quote. So you're right, the factor, one of them is her age. Why does that have anything to do with her medical opinion? That also goes to her vocational rehabilitation potential. Right? What would be a medical opinion that stands only as a medical opinion? What, and maybe in this case, I mean, hypothetically, would be a medical opinion as a medical opinion? The two reported appellate court cases I found that addressed that issue are SICO and SHUN. And in those, the court was looking for the language, the claimant cannot perform any work from a medical professional. And how detailed does that, that's a conclusion. How detailed does the testimony have to be to support that conclusion? And to what does that testimony have to address to make it a medical opinion? From what I saw in the cases, it wasn't really clear what the basis for those opinions were. In fact, I think in both those cases, the employees were denied permanent total disability. So it was the absence of those, of that language that the court focused on when denying based on medical permanent total disability. Yeah, okay. So then let's go and reverse the coin. Hypothetically, what would be sufficient medical basis for a conclusion like that? That's a medical opinion. What would be the testimony of the physician to make it medical? I guess the restrictions would have to be so severe that. I mean, see, that's where we're getting all messed up in this area. There's gotta be something that's unique to being a physician and that you have to testify to that would lead to a conclusion that medically you were, quote, so debilitated that you could not work. Yeah, and, you know, I- Would the testimony have to be addressed to lumbar, muscular, skeletal? I mean, actual medical, which is why people go to medical school to know that stuff? Correct, yeah, I think it would be, which is why we don't see this. That hardly ever happens. It's almost always that they can lift five pounds four hours a day and that's all they can do. And then you get all these cases, almost all of them are odd lot cases, right? I mean, how many cases come across your desk that aren't odd lot that are permanent total cases? You might not have even had one because you're right. To come to the conclusion that someone's medically and permanently and totally disabled, that would have to be such severe restrictions that I would think you wouldn't even be able to perform your own activities of daily life. If you couldn't do anything, if you don't take in any other factors, if you look at it from a medical standpoint, which is all Dr. DePhillips and Dr. Eilers are able to do, is look at it medically, you're right. That I don't know what that could possibly be where you can make a medical determination that someone couldn't work. So in conclusion, I would ask that this court reverse the commission decision as it's against the manifest way to the evidence. Thank you. Thank you, counsel, both for your arguments in this matter this afternoon. It will be taken.